UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MOHAN A. HARIHAR, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 15-cv-11880-ADB |
| | * | |
| U.S. BANK NATIONAL ASSOCATION, et al. | * | |
| | * | |
| Defendants. | * | |
| | * | |

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

Plaintiff Mohan A. Harihar ("Harihar" or "Plaintiff") brings suit against numerous
defendants alleging unlawful conduct associated with the foreclosure of his home. Following this
Court's April 27, 2016 Order [ECF No. 43], which dismissed several claims and defendants,
there are 13 remaining defendants: U.S. Bank N.A. and Wells Fargo (the "Bank Defendants");
RMBS CMLTI 2006 AR-1 (the "Trust"); the Commonwealth of Massachusetts and former
Massachusetts Attorney General Martha Coakley; Harmon Law Offices, PC ("Harmon");
Nelson, Mullins, Riley, and Scarborough, LLP ("Nelson Mullins"); Attorney Peter Haley; Mary
Daher, Ken Daher, and the Daher Companies (the "Daher Defendants"); and Jeffery and Isabelle
Perkins ("the Perkinses").

Presently pending before this Court are seven motions to dismiss all of the remaining
claims against each of the remaining defendants. [ECF Nos. 66, 68, 70, 72, 76, 78, 91]. Harihar
has filed oppositions to each of these motions. [ECF Nos. 107–13]. After careful consideration of
all the filings submitted by the parties, and for the reasons discussed below, this Court <u>GRANTS</u>
all seven of the outstanding motions to dismiss and <u>DISMISSES</u> the Complaint with prejudice.

## I.      BACKGROUND

The following facts are based on Harihar's Second Amended Complaint [ECF No. 24 (the "Complaint")], unless otherwise noted. Although the Court accepts all well-pleaded factual allegations as true, it need not credit Harihar's conclusory legal allegations. See A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013).

In December 2005, Harihar purchased property at 168 Parkview Avenue in Lowell, Massachusetts (the "Property"). Complaint ¶¶ 31, 43, 48. In connection with this purchase, Harihar obtained a loan and granted a mortgage to Wells Fargo Home Mortgage, which was both the lender and the loan servicer. Id. ¶¶ 48–50. From approximately December 2005 through August 2009, Harihar made monthly mortgage payments of around $2,458.00 to Wells Fargo. Id. ¶ 49.

In or around November 2008, Harihar experienced financial difficulties, which led him to seek a loan modification from Wells Fargo. Id. ¶ 51. Due to an alleged "calculation error" by Wells Fargo, his request was declined. Id. Wells Fargo refused to correct the error. Id. Harihar made a second request for a loan modification, which was also denied due to the same alleged error on the part of Wells Fargo. Id.

Harihar asserts that Wells Fargo then informed him that it would not grant him a loan modification unless there was a "default" on the mortgage for a period of at least 90 days. Id. Harihar took this as an instruction to stop making payments on his mortgage. Id. After he defaulted, he was instructed to make a "good faith payment" equivalent to one month's mortgage payment in order to qualify for a loan modification. Id. Harihar made the required payment, but his modification application was once again declined, due to the same alleged "calculation error"

by Wells Fargo. Id. All told, Harihar tried for 22 months, without success, to secure a loan modification. Id.

In approximately April or May of 2009, U.S. Bank, acting as trustee for the Trust (RMBS CMLTI 2006-ARl) that purportedly owned Harihar's promissory note at the time, filed a civil action in Massachusetts state court to foreclose on the Property. Id. ¶ 58. The Property was sold at a foreclosure auction in September 2010. Id. ¶¶ 51, 59.

Harihar then engaged in extensive litigation in the Massachusetts state courts to fight the foreclosure. The Court takes judicial notice of the state court records submitted by the Bank Defendants as attachments to their memorandum in support of their motion to dismiss and summarizes them in pertinent part here.[1] See generally Exhibits to Bank Defendants' Motion to Dismiss [ECF No. 67]. On May 23, 2011, after the foreclosure of the Property, U.S. Bank filed a summary process eviction action against Harihar in Lowell District Court to gain possession of the Property. [ECF No. 67-4 at 2]. On August 31, 2011, upon U.S. Bank's motion, the case was transferred to the Northeast Housing Court (the "Housing Court"), id., where Harihar continued to contest the foreclosure. See [ECF No. 67-5 at 5, 11, 19]. U.S. Bank moved for summary judgment on its claim of possession to the Property on the grounds that it held valid title, to which Harihar failed to file an opposition. See U.S. Bank Nat'l Ass'n v. Harihar, No. 12-P-1515, 2013 WL 5925143, at *1 (Mass. App. Ct. Nov. 6, 2013).

On January 23, 2012, the Housing Court held a hearing on U.S. Bank's motion for summary judgment, during which both U.S. Bank and Harihar presented arguments. [ECF No.

---

[1] The Court may take judicial notice of court papers from state court litigation in deciding the motion to dismiss. See, e.g., Giragosian v. Ryan, 547 F.3d 59, 66 (1st Cir. 2008) ("A court may consider matters of public record in resolving a Rule 12(b)(6) motion to dismiss. Matters of public record ordinarily include documents from prior state court adjudications." (internal citations and quotations omitted)).

67-6]. At the hearing, U.S. Bank produced certified copies of the mortgage, a recorded

assignment of the mortgage to U.S. Bank, and the foreclosure deed, as well as the original

promissory note. Id. at 3–4. U.S. Bank argued that it had sufficiently established valid title to the

Property. Id. at 4. Harihar contested the validity of the foreclosure at the hearing. Id. at 12–13.

The Housing Court granted U.S. Bank's motion for summary judgment and entered judgment on

January 26, 2012. [ECF No. 67-4 at 4]. The decision was affirmed by the Massachusetts Appeals

Court on November 6, 2013. Harihar, 2013 WL 5925143, at *1 (hereinafter, "Harihar I"). Before

the Harihar I court, Harihar argued:

> (1) his case was not properly transferred to the Housing Court; (2) the Housing
> Court judge failed to consider equitable preforeclosure loan modification claims;
> (3) the Housing Court judge failed to allow certain discovery; (4) U.S. Bank failed
> to establish the proper chain of title to the property; and (5) the decision of the
> Housing Court judge was premature given pending actions by the Attorneys
> General of various States in connection with the national mortgage crisis.

Id. The Harihar I court held that Harihar had failed to comply with Massachusetts procedural

rules because his appeals briefing was deficient, but also that the claims would have failed on the

merits. Id.

On December 16, 2011, while the Housing Court litigation was ongoing, Harihar filed a

complaint in Massachusetts Middlesex County Superior Court (the "Superior Court") against the

Bank Defendants and Harmon, seeking to enjoin the foreclosure and sale of his home and gain

monetary damages. [ECF No. 67-9 at 1]; see also Harihar I, 2013 WL 5925143, at *1 n.1;

Harihar v. U.S. Bank, N.A., 5 N.E.3d 1, 2014 WL 981527, at *1 (Mass. App. Ct. Mar. 14, 2014)

(hereinafter, "Harihar II"). In the Superior Court complaint, Harihar directly attacked the

propriety and legality of the foreclosure of the Property. See [ECF No. 67-9]. He alleged that the

"Bank Defendants engaged in unfair or deceptive foreclosure practices," including that they

failed to comply with relevant statutory schemes in the foreclosure, falsely represented

themselves as present holders of mortgages to mortgagors, and engaged in false documentation practices to facilitate foreclosure. Id. Further, Harihar alleged that the Bank Defendants deceived homeowners in their role as servicers of loans and during loan modification programs. Id. The Bank Defendants filed a motion to dismiss pursuant to Mass. R. Civ. P. 12(b)(6)[2] and 12(b)(9). [ECF No. 67-11 at 2–3]. Harihar did not respond to the Bank Defendants' motion, and the Superior Court allowed it, dismissing the complaint. [ECF No. 67-12]. The Superior Court also granted Harmon's motion to dismiss pursuant to Mass. R. Civ. P. 12(b)(6). [ECF No. 67-8 at 4; ECF No. 92-1]. Harihar filed a motion for a new trial ten months after the dismissal of his complaint, which the Superior Court denied. Harihar I, 2013 WL 5925143, at *1 n.1; Harihar II, 2014 WL 981527, at *1. The Superior Court also denied his motion for reconsideration. Id. Harihar then appealed the denial of these motions to the Massachusetts Appeals Court. Harihar II, 2014 WL 981527, at *1. The Harihar II court affirmed the Superior Court on procedural and substantive grounds. Id.

Harihar returned to the Superior Court in 2013, before the Harihar II decision came down, and filed two motions, which were denied and which he also appealed to the Massachusetts Appeals Court. See Harihar v. U.S. Bank, N.A., 20 N.E.3d 982, 2014 WL 6889417, at *1 (Mass. App. Ct. Dec. 9, 2014) ("Harihar III"). Harihar's first motion was for "a court order against the defendants and their counsel 'to cease and desist from making false, unfounded statements against'" him. Id. Harihar also moved for clarification of comments made by the Bank Defendants' counsel. Id. The Harihar III court affirmed the Superior Court's denials of the two motions, and agreed with the Bank Defendants that the appeal was "frivolous." Id.

---

[2] This rule is nearly identical to Federal Rule of Civil Procedure 12(b)(6).

In the instant case, Harihar contends that Wells Fargo acted unlawfully with respect to his failed loan modification and the foreclosure on the Property. Complaint ¶¶ 52, 57. He alleges that U.S. Bank did not have the authority to foreclose on his home, due to allegedly "fraudulent assignments" of Harihar's mortgage, id. ¶ 60, and that the Bank Defendants and their counsel acted unlawfully in the state court litigation following the foreclosure. Id. ¶¶ 15(a)–(d), 65(f). Harihar believes that his experiences are representative of systemic problems in the national mortgage market. See id. ¶ 43. Harihar alleges that the Bank Defendants created, sold, and serviced securities allegedly backed by notes and residential real estate mortgages, when in fact, the trusts that issued the securities did not possess the notes or hold validly assigned mortgages. Id. ¶ 2. Further, he claims that when certain defendants foreclosed upon property, they used fraudulent mortgage assignments to conceal the fact that the trusts lacked the critical assignments and notes. Id. Because the trusts lacked valid title to the mortgages and did not possess the underlying notes, Harihar claims that the trusts did not have the ability to foreclose on people's homes, including the Property. Id.

Harihar additionally alleges that Harmon Law Offices, which represented the Bank Defendants and the Trust in litigation in state courts relating to the foreclosure of the Property, and Nelson Mullins, a law firm that also represented the Bank Defendants' during state court litigation pertaining to the Property, acted unlawfully in connection with the foreclosure and subsequent litigation. Id. ¶¶ 20 n.24, 76, 77. According to Harihar, Peter Haley, a partner at Nelson Mullins, "supported" the allegedly unlawful actions of Nelson Mullins attorney David E. Fialkow during that state court litigation. Id. ¶ 78.

Ken and Mary Daher are real estate brokers who own Daher Companies, a real estate brokerage firm. Id. ¶ 81. Harihar claims that the Daher Defendants unlawfully resold the

6

Property to Jeffery and Isabelle Perkins, who otherwise have no connection to this case. Id.

Finally, Harihar alleges numerous abuses of judicial discretion in state courts during the

litigation surrounding the foreclosure of the Property, including an Equal Protection violation. Id.

¶¶ 15(c), 29, 65, 131.

On May 20, 2015, Harihar filed his first complaint in federal court, [ECF No. 1], which

he amended on June 22, 2015, [ECF No. 6]. After receiving permission from the Court, Harihar

filed a Second Amended Complaint on November 6, 2015. [ECF No. 24]. On April 27, 2016,

upon their motion, the Court dismissed all counts against two Nelson Mullins attorneys (Fialkow

and Jeffrey S. Patterson). [ECF No. 43]. The Court also granted the Bank Defendants' motion to

dismiss with respect to Counts 1 through 6, although those counts remain pending against other

defendants. The Bank Defendants' motion to dismiss Counts 7 through 12, however, was denied

without prejudice to allow the Bank Defendants time to develop their res judicata argument. Id.

Following the Court's April 2016 Order, the following counts remain:

Count 3:      Federal False Claims Act (FCA), 31 U.S.C. § 3729(a)(1)(D)
              (all remaining defendants, except the Bank Defendants)

Count 4:      FCA, 31 U.S.C. § 3729(a)(1)(G)
              (all remaining defendants, except the Bank Defendants)

Count 5:      FCA, 31 U.S.C. § 3729(a)(1)(C)
              (all remaining defendants, except the Bank Defendants)

Count 6:      MA False Claims Act, M.G.L. ch. 12, §§ 5B(a)(1)-(4), (8)
              (all remaining defendants, except the Bank Defendants)

Counts 7–11:  Numerous violations of MA Consumer Protection Act, M.G.L. ch.
              93A, § 2
              (the Bank Defendants)

Count 12:     M.G.L. ch. 185, § 67 (declaratory judgment)
              (the Bank Defendants)

| Count 13: | Fourteenth Amendment (Due Process and Equal Protection) (Commonwealth of Massachusetts) |
|---|---|
| Count 14: | Racketeer and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (Commonwealth of Massachusetts, Nelson Mullins) |
| Count 15: | 18 U.S.C. § 242 (civil rights) (Commonwealth of Massachusetts) |
| Count 16 | 17 U.S.C. § 501 (copyright) (not specified) |
| Count 17: | 17 U.S.C. § 506(a)(1)(A), 18 U.S.C. § 2319(b) (copyright) (not specified) |
| Count 17+ | "Misconduct associated with secondary defendants" (not specified) |

Additionally, the Complaint may be liberally construed to allege the following state law claims: perjury (against the Bank Defendants, Complaint ¶ 15, the Trust, id., Harmon, Complaint ¶ 76, Nelson Mullins and Haley, Complaint ¶¶ 77–78); fraudulent concealment (against Harmon, Complaint ¶ 76, Nelson Mullins and Haley, Complaint ¶¶ 77–78); fraudulent misrepresentation (against Harmon, Complaint ¶ 76, Nelson Mullins and Haley, Complaint ¶¶ 77–78); and aiding and abetting fraud (against Harmon, Complaint ¶ 76, Nelson Mullins and Haley, Complaint ¶¶ 77–78, and the Daher Defendants, Complaint ¶ 81).

The remaining defendants have each filed a motion to dismiss as follows: [ECF Nos. 66 (motion to dismiss by the Bank Defendants); 68 (motion to dismiss by the Trust); 70 (motion to dismiss by the Commonwealth of Massachusetts and former Attorney General Martha Coakley); 72 (motion to dismiss by the Perkinses); 76 (motion to dismiss by Nelson Mullins and Haley); 78

(motion to dismiss by the Daher Defendants); 91 (motion to dismiss by Harmon)]. Harihar filed oppositions to each of the motions to dismiss. See [ECF Nos. 107–13].[3]

## II.    LEGAL STANDARD

On a motion to dismiss for failure to state a claim pursuant to Federal Rules of Civil Procedure Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most hospitable to the plaintiff's theory, and draw all reasonable inferences from those facts in favor of the plaintiff. United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011). Aside from the complaint, "within the Rule 12(b)(6) framework, a court may consider matters of public record and facts susceptible to judicial notice." U.S. ex rel. Winkelman v. CVS Caremark Corp., 827 F.3d 201, 208 (1st Cir. 2016). Such facts include documents from prior state court adjudications. Giragosian, 547 F.3d at 66.

Although detailed factual allegations are not required, a complaint must set forth "more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action" is not enough. Id. To avoid dismissal, a complaint must set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotations and citation omitted). In addition, with respect to all claims of fraud, a plaintiff is required to "state with particularity" the circumstances constituting fraud. See Fed. R. Civ. P. 9(b).

Further, the facts alleged, when taken together, must be sufficient to "state a claim to relief that is plausible on its face." Elsevier, Inc., 732 F.3d at 80 (quoting Twombly, 550 U.S. at

---

[3] While these motions were pending, Harihar filed a motion to file a Third Amended Complaint [ECF No. 74], which the Court denied on futility grounds [ECF No. 81]. Harihar made a second motion to amend [ECF No. 106], which this Court again denied [ECF No. 116].

570). "The plausibility standard invites a two-step pavane." Id. "At the first step, the court 'must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). "At the second step, the court must determine whether the remaining factual content allows a reasonable inference that the defendant is liable for the misconduct alleged." Id. (internal quotations and citation omitted). "The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." Sepulveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010).

Because Harihar is proceeding *pro se*, the Court will construe his allegations liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, a *pro se* litigant still must comply with procedural and substantive law. Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997). Dismissal of a *pro se* complaint is appropriate when the complaint fails to state an actionable claim. Muller v. Bedford VA Admin. Hosp., No. 11-cv-10510-DJC, 2013 WL 702766, at *3 (D. Mass. Feb. 25, 2013) (citing Overton v. Torruella, 183 F. Supp. 2d 295, 303 (D. Mass. 2001)).

Challenges to the Court's subject matter jurisdiction, such as assertions of sovereign immunity, are brought under Federal Rule of Civil Procedure 12(b)(1). Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362–63 (1st Cir. 2001). When a Rule 12(b)(1) motion raises Eleventh Amendment issues, however, a court may decide the merits-based arguments first, thereby avoiding the constitutional issue. Greenless v. Almond, 277 F.3d 601, 606–08 (1st Cir. 2002); see also Buchanan v. Maine, 469 F.3d 158, 172–73 (1st Cir. 2006); Brait Builders Corp. v. Mass., Div. of Capital Asset Mgmt., 644 F.3d 5, 11 (1st Cir. 2011) ("[F]ederal courts may

resolve a case on the merits in favor of a state without first resolving any Eleventh Amendment issues the state raises.").

## III.    DISCUSSION

Given the large number of defendants, complexity of the Complaint, and inter-connectedness of the claims, the Court proceeds motion by motion, but also notes where reasons for dismissal would be applicable generally to all parties or counts. The Court will reiterate arguments as it progresses through the Memorandum as needed, but not comprehensively each time.

### a.   Standing

In the Complaint, Harihar makes allegations which are personal to him, but also includes allegations related to broader concerns about mortgage foreclosures that involve mortgages other than his own. Although Harihar has standing to litigate claims on his own behalf, he does not have standing to launch a broader challenge.

The Constitution allows judicial power to apply only to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. The Supreme Court has interpreted this requirement to mean that courts may decide only "cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102 (1998). A plaintiff's standing to sue is "part of the common understanding of what it takes to make a justiciable case." Id.; see also Microsystems Software, Inc. v. Scandinavia Online AB, 226 F.3d 35, 39 (1st Cir. 2000) ("[T]he absence of standing sounds the death knell for a case."). The standing determination is "claim-specific," meaning that a plaintiff "must have standing to bring each and every claim that [he] asserts." Katz v. Pershing, LLC, 672 F.3d 64, 71 (1st Cir. 2012).

The standing requirement consists of three elements: "First and foremost, there must be alleged (and ultimately proved) an 'injury in fact.'" Steel Co., 523 U.S. at 103 (quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)). This injury "must be concrete in both a qualitative and temporal sense," "distinct and palpable" as opposed to "abstract," and "actual or imminent" as opposed to "conjectural or hypothetical." Whitmore, 495 U.S. at 155 (internal quotations and citations omitted). Second, standing requires causation, defined as a "fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant." Steel Co., 523 U.S. at 103. Finally, standing requires "redressability—a likelihood that the requested relief will redress the alleged injury." Id.

Here, Harihar lacks standing to allege that the foreclosure crisis resulted in monetary losses to a large number of other people. The first element of standing—that Plaintiff suffered a "concrete," "distinct," and "actual or imminent" injury—is met when it comes to Harihar's claims about his *own* losses due to foreclosure, but not when it comes to his broader claims about the foreclosure crisis generally. See Whitmore, 495 U.S. at 155 (internal quotations and citations omitted). Although the Court sympathizes with Harihar's concern and frustration over the losses suffered by many as a result of the mortgage crisis, his assertions about general violations that have affected the "undifferentiated public interest" and for which he seeks "vindication of the rule of law" are insufficient for standing. See Steel Co., 523 U.S. at 106. Furthermore, the federal courts have renounced attempts to "convert the judicial process into 'no more than a vehicle for the vindication of the value interests of concerned bystanders.'" Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc., 454 U.S. 464, 473 (1982) (quoting United States v. SCRAP, 412 U.S. 669, 687 (1973)). Because Harihar's claims about the broad impact

of the foreclosure crisis seek precisely this form of vindication, all claims are dismissed for lack of standing to the extent they are based on harms beyond those suffered by Harihar himself.

### b.  Pleading Deficiencies in Counts 16, 17, and 17+

Portions of Harihar's Complaint in its current form are insufficiently pleaded under the basic requirements laid out in Iqbal/Twombly. Specifically, in Counts 16 (copyright infringement), 17 (punishment for criminal copyright infringement), and 17+ ("misconduct associated with secondary defendants"), Harihar fails to name specific defendants and it is therefore unclear which defendants he is accusing and on what basis, and what relief he is seeking. This impermissibly fails to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Twombly, 550 U.S. at 555 (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see also Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005), and thus deprives the defendant(s) of a "meaningful opportunity to mount a defense," Díaz-Rivera v. Rivera-Rodríguez, 377 F.3d 119, 123 (1st Cir. 2004) (quoting Rodríguez v. Doral Mortg. Corp., 57 F.3d 1168, 1172 (1st Cir. 1995)). To survive a motion to dismiss, "the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why." Educadores Puertorriqueños en Acción v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004).

Because Counts 16,[4] 17,[5] and 17+ fail to adequately identify a defendant, and therefore fail to provide any defendant with the information needed to fairly defend the claim, these counts are dismissed.

      c.   __Motions to Dismiss by Daher Defendants [ECF 78] and the Perkinses [ECF 72]__

          i.   *Insufficient Factual Allegations With Respect to the Daher Defendants and Perkinses*

Although Plaintiff does not name the Daher Defendants or the Perkinses explicitly in any numbered counts, the following four counts reference "all defendants:" Count 3 (Federal False Claims Act, 31 U.S.C. § 3729(a)(1)(D)); Count 4 (Federal False Claims Act, 31 U.S.C. § 3729(a)(1)(G)); Count 5 (Federal False Claims Act, 31 U.S.C. § 3729(a)(1)(C)); and Count 6

---

[4] Count 16 alleges civil copyright infringement in violation of 17 U.S.C. § 501. Even if specific defendants had been identified, the count would still be dismissed. To establish copyright infringement, a plaintiff must prove two elements: (1) ownership of a valid copyright; and (2) the copying of constituent elements of the work that are original. Situation Mgmt. Sys., Inc. v. ASP. Consulting LLC, 560 F.3d 53, 58 (1st Cir. 2009). To prove the second element, a plaintiff must show that the defendant "actually copied the work as a factual matter," and that the defendant's copying was "so extensive that it rendered the infringing and copyrighted works 'substantially similar.'" Id. (quoting T–Peg, Inc. v. Vt. Timber Works, Inc., 459 F.3d 97, 108 (1st Cir. 2006)). Harihar's Complaint contains vague references to an "economic model" called the "FCS Model," or the "Foreclosure Crisis Solution," which Plaintiff allegedly developed. See Complaint ¶¶ 13, 30, see also Complaint, Ex. U. Harihar does not plead any facts, however, alleging that any of the named defendants copied his allegedly copyrighted work. Because Plaintiff has not alleged any facts to support his copyright infringement claim, Count 16 of the Complaint would be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) even assuming that it named specific defendants.

[5] In Count 17, Harihar claims that the defendants violated 17 U.S.C. § 506(a)(1)(A) in conjunction with 18 U.S.C. § 2319(b). Section 2319 is a criminal statute that provides that any person who violates 17 U.S.C. § 506(a) (relating to criminal copyright infringement) shall be punished according to the penalties set forth in § 2319. Harihar, as a private citizen, cannot sue for violations of the federal criminal laws because "[t]here is no private cause of action under the criminal provisions of the copyright law." Elastic Wonder, Inc. v. Posey, 179 F. Supp. 3d 307, 318 (S.D.N.Y. 2016) (quoting Kelly v. L.L. Cool J., 145 F.R.D. 32, 39 (S.D.N.Y. 1992)); see also Ophthalmic Res. Assoc., Inc. v. SARcode Corp., No. 12-11371-RWZ, 2013 WL 2247584, at *3 (D. Mass. May 22, 2013) ("17 U.S.C. § 506(d), a criminal statute, does not imply a private right of action."). Even assuming that Count 17 had properly named specific defendants, it would nonetheless be dismissed on this basis.

(Massachusetts False Claims Act, Mass. Gen. Laws ch. 12, § 5(B)). The Complaint also seems to assert an unnumbered count against the Daher Defendants for aiding and abetting fraud. Complaint ¶ 81.

With regard to the Daher Defendants, aside from identifying them and reporting that Harihar filed a complaint against them with the Northeast Association of Realtors, Harihar alleges only that they "disregarded disclosures indicating an illegal foreclosure, choosing instead to move forward unethically, with selling the illegal foreclosure to the current homeowners, Jeffrey and Isabelle Perkins." Complaint ¶¶ 39, 74, 81. In their motion to dismiss, the Daher Defendants argue that these conclusory statements, unaccompanied by any additional factual allegations, do not make out any viable legal claims against them. In response to the motion to dismiss, Harihar claims only that the Daher Defendants knew he was contesting the foreclosure, acted unethically by participating in the sale of the property, and have shown no remorse.

Similarly, aside from identifying the Perkinses as the current owners of the Property, Harihar alleges only that they "disregarded the Plaintiff's disclosure warning against misconduct associated with the property, and legal action forthcoming against ALL parties aligning with the misconduct, including Real Estate Brokers and homebuyers." Complaint ¶ 82. In their motion to dismiss, the Perkinses assert that the Complaint must be dismissed as against them because it does not allege that they engaged in any wrongful conduct and otherwise fails to state a cognizable claim. Harihar responds that the foreclosure of his property was void and that the Perkinses should have known better than to purchase it, and further, that they have showed no remorse for their actions.

Because Harihar does not sufficiently plead factual allegations of wrongdoing with regard to the Perkinses or the Daher Defendants and wholly fails to meet even basic pleading

requirements, all claims against them are dismissed for failure to state a claim upon which relief can be granted.

          *ii.   Counts 3 Through 6 (as to All Defendants)*

Even assuming that the Complaint included additional allegations with regard to the Perkinses and the Daher Defendants, Counts 3 through 6 would still fail as a matter of law and will therefore be dismissed as against all defendants.

Counts 3 through 5 allege violations of the federal False Claims Act, 31 U.S.C. § 3729(a) (the "FCA"), which is a statute that "reach[es] all types of fraud, without qualification, that might result in financial loss to the Government." Cook County, Ill. v. U.S. ex rel Chandler, 538 U.S. 119, 129 (2003). The FCA contains *qui tam* provisions, which "supplement federal law enforcement resources by allowing whistleblowers (known as relators) to bring certain fraud claims on behalf of the government." United States v. Infomedics, Inc., 847 F. Supp. 2d 256, 261 (D. Mass. 2012).

Here, Plaintiff alleges that all defendants[6] violated subsections (a)(1)(A), (B), (C), (D), and (G) of 31 U.S.C. § 3729. These provisions impose liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," § 3729(a)(1)(A); who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," § 3729(a)(1)(B); who conspires to commit a violation of the FCA, § 3729(a)(1)(C); who "has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property," § 3729(a)(1)(D); or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit

---

[6] The Court notes that these counts have already been dismissed with regard to the Bank Defendants in the order issued on April 27, 2016. [ECF No. 43].

money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government," § 3729(a)(1)(G).

Harihar's Complaint, however, does not identify any "claim for payment or approval" that was submitted to the government, nor does it allege that any of the defendants had possession, custody, or control of any money or property to be used by the government, or that any money or property was owed to the government. Instead, Harihar essentially alleges that the defendants participated in the creation and use of fraudulent mortgage assignments and note endorsements that were used in foreclosures, including the foreclosure of the mortgage on Plaintiff's Property. See Complaint ¶ 97. These allegations fail to state a viable claim for relief under the cited provisions of the FCA, and Counts 3 through 5 are therefore dismissed as to all defendants.

For similar reasons, the Court must also dismiss Count 6 of the Complaint, which alleges violations of the Massachusetts False Claims Act, Mass. Gen. Laws ch. 12, § 5A et seq. (the "MFCA"). Like the federal FCA, the MFCA allows relators to bring civil actions in Massachusetts Superior Court on behalf of the Commonwealth for violations of the MFCA. Id. § 5C(2). Putting aside the question of whether Harihar has complied with the MCFA's procedural requirements, see Mass. Gen. Laws ch. 12, § 5C(3) (requiring plaintiff to serve a copy of the complaint and disclosure of material evidence on the attorney general, and to file the complaint under seal), the Complaint fails to allege any facts that could serve as the basis for an MFCA claim. See Mass. Gen. Laws. ch. 12, § 5B.

The MCFA prohibits a person from, inter alia, presenting a "false or fraudulent claim for payment or approval"; making a "false record or statement material to a false or fraudulent

17

claim"; having possession, custody, or control of "property or money" used or to be used by the Commonwealth, and delivering less than all of that property or money; entering into an agreement with an official of the Commonwealth, knowing that the information contained therein is false; making a false record or statement material to an obligation to pay or transmit money or property to the Commonwealth; or failing to disclose that the person received payment on a false claim inadvertently submitted to the Commonwealth. See Mass. Gen. Laws. ch. 12, § 5B(a)(1)–(10). Harihar's Complaint identifies no false or fraudulent claim that was submitted to the Commonwealth, no money or property that was to be used by the Commonwealth, and no false or fraudulent statements, records, or agreements with the Commonwealth. Accordingly, there appears to be no basis for a MFCA claim, and Count 6 of the Complaint is therefore dismissed against all remaining defendants.

### d. **Motion to Dismiss by Harmon [ECF 91]**

Like references regarding the Daher Defendants and Perkinses, the references to the Harmon Law Offices in the Complaint are minimal. Although Harihar does not name Harmon explicitly in any numbered counts, Counts 3 through 6 are brought against all defendants, and certain unnumbered state law claims seem to include Harmon, including perjury, fraudulent concealment, fraudulent misrepresentation, and aiding and abetting fraud, Complaint ¶ 76.

Harmon is explicitly mentioned only in paragraphs 19, 34, 64 and 76 of the Complaint. The content of each of these four paragraphs is virtually the same, generally alleging that Harmon, a Newton-based law firm, was U.S. Bank's prior counsel; that Harmon withdrew from the case shortly after the Massachusetts Attorney General began an investigation of Harmon's involvement with unlawful foreclosures; that Harmon is a "foreclosure mill" that has been involved with more than 50,000 foreclosures; and that Harmon is linked to a "Florida foreclosure

kingpin." Again, because Harihar does not plead anything more than conclusory allegations of

wrongdoing, if that, with regard to Harmon, all claims against Harmon are dismissed.

Although Harmon does argue that those Counts should be dismissed for failure to state a

claim under Fed R. Civ. P. 12(b)(6), it also argues that the Complaint should be dismissed

against Harmon based on the <u>Rooker-Feldman</u> doctrine and res judicata, asserting in essence that

the claims have been resolved in state court and should not be reviewed here. Because <u>Rooker-

Feldman</u> is jurisdictional and the two doctrines are related, the Court will discuss them, albeit

somewhat summarily. <u>See</u> <u>In re Middlesex Power Equip., & Marine, Inc.</u>, 292 F.3d 61, 66 n.1

(1st Cir. 2002). ("The <u>Rooker–Feldman</u> doctrine is jurisdictional in nature; if a case is dismissed

because the <u>Rooker–Feldman</u> doctrine applies, it means the court has no subject matter

jurisdiction to hear the case.").

The <u>Rooker-Feldman</u> doctrine, as decided by the Supreme Court, holds that federal

district courts lack jurisdiction to consider "cases brought by state-court losers complaining of

injuries caused by state-court judgments rendered before the district court proceedings

commenced and inviting district court review and rejection of those judgments." <u>Lance v.

Dennis</u>, 546 U.S. 459, 464 (2006) (quoting <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544

U.S. 280, 284 (2005)). The doctrine also "precludes courts from exercising subject matter

jurisdiction where the issues presented in the case 'are inextricably intertwined' with questions

previously adjudicated by a state court, such that the federal district court would be in the

unseemly position of reviewing a state court decision for error." <u>In re Zambre</u>, 306 B.R. 428, 432

(Bankr. D. Mass 2004). When a state court litigant seeks federal review of a "final state-court

judgment[]," the Supreme Court has exclusive jurisdiction. <u>Lance</u>, 546 U.S. at 463 (citing <u>D.C.

Ct. App. v. Feldman</u>, 460 U.S. 462, 482 (1983)); <u>see also</u> 28 U.S.C. § 1257. Here, Harmon

argues that because the Superior Court's judgment dismissing Harihar's complaint was final, this Court lacks subject matter jurisdiction and Harihar's recourse lies with the Supreme Court. The First Circuit, however, has bypassed <u>Rooker-Feldman</u> issues where it held that a claim was barred by res judicata. <u>See</u> <u>Torromeo v. Town Of Fremont, N.H.</u>, 438 F.3d 113, 115 (1st Cir. 2006) ("Because we agree that Plaintiffs' Fifth Amendment claim is [barred by] res judicata, we bypass the <u>Rooker–Feldman</u> issue and proceed to the district court's alternative ruling."); <u>see also</u> <u>Garcia-Monagas v. De Arellano</u>, 674 F.3d 45, 50 n.5 (1st Cir. 2012) (bypassing <u>Rooker-Feldman</u> issue where claims barred by res judicata). This Court will do the same.

"Under the full faith and credit statute, 28 U.S.C. § 1738, a judgment rendered in a state court is entitled to the same preclusive effect in federal court as it would be given within the state in which it was rendered." <u>Giragosian</u>, 547 F.3d at 63 (quoting <u>In re Sonus Networks, Inc.</u>, 499 F.3d 47, 56 (1st Cir. 2007)); <u>see also</u> <u>Marrese v. Am. Acad. of Orthopaedic Surgeons</u>, 470 U.S. 373, 380 (1985); <u>Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.</u>, 547 F.3d 48, 51 (1st Cir. 2008) ("A federal court sitting in diversity must apply state law to determine the preclusive effect of an earlier state court judgment."). In Massachusetts, res judicata includes both claim and issue preclusion. <u>Giragosian</u>, 547 F.3d at 63. "Claim preclusion prevents the relitigation of all claims that a 'litigant had the opportunity and incentive to fully litigate . . . in an earlier action.'" <u>Id.</u> (quoting <u>In re Sonus Networks, Inc.</u>, 499 F.3d at 56). "The doctrine of claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and bars further litigation of all matters that were or should have been adjudicated in the action." <u>Heacock v. Heacock</u>, 520 N.E.2d 151, 152–53 (Mass. 1988).

"It is . . . procedurally appropriate to consider res judicata on a motion to dismiss as long as 'there was no prejudice to plaintiff resulting from the procedural format in which the issue of

res judicata was considered.'" <u>Lynch v. Bd. of St. Exam'rs of Electricians</u>, 218 F. Supp. 2d 3, 6 (D. Mass. 2002) (quoting <u>Diaz-Buxo v. Trias Monge</u>, 593 F.2d 153, 155 (1st Cir. 1979)). Here, Plaintiff has had ample opportunity to argue against the applicability of res judicata. As such, the Court discerns no prejudice from addressing res judicata on a motion to dismiss.

To establish claim preclusion under Massachusetts law, a party must show: "(1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits." <u>DaLuz v. Dep't of Corr.</u>, 746 N.E.2d 501, 505 (Mass. 2001); <u>see also</u> <u>Andrew Robinson Int'l, Inc.</u>, 547 F.3d at 52. With regard to the second element, "[a] claim is the same for [claim preclusion] purposes if it is derived from the same transaction or series of connected transactions." <u>TLT Constr. Corp. v. A. Anthony Tappe & Assocs., Inc.</u>, 716 N.E.2d 1044, 1051 (Mass. App. Ct. 1999) (alteration in original) (internal quotations omitted) (quoting <u>Saint Louis v. Baystate Med. Ctr, Inc.</u>, 568 N.E.2d 1181, 1185 (Mass. App. Ct. 1991)).

All of the elements of Massachusetts claim preclusion are met here. First, the parties are identical: the same plaintiff, Harihar, brought suit against the same defendant, here, Harmon, in both this case and the Superior Court action. <u>See</u> <u>Harihar II</u>; [ECF No. 67-9]. Second, the claims against Harmon in the instant action "derive from the same transaction or series of connected transactions" as Harihar's challenges to the foreclosure in Superior Court. In his Superior Court complaint, Harihar sued Harmon for its representation of U.S. Bank during the foreclosure of the Property. He now sues Harmon in connection with the same foreclosure. Although Harihar challenges the foreclosure under some different statutes and legal theories, he essentially made similar arguments based on the same events in the state courts as he does here, which is sufficient to establish an identity of claims for claim preclusion purposes. <u>See</u> <u>Andrew Robinson</u>

Int'l, Inc., 547 F.3d at 52 ("Discrete theories of liability may constitute identical causes of action for claim preclusion purposes if they are based on the same nucleus of operative facts."); see also Steele v. Bongiovi, 784 F. Supp. 2d 94, 98 (D. Mass. 2011) (finding an identity of claims where claims in later lawsuit were "intimately related" to claims in earlier lawsuit and plaintiff could have raised them earlier); Chuang Invs. v. Eagle Inns, Inc., 893 F. Supp. 102, 104 (D. Mass. 1995) (holding state law claims barred by principle of res judicata because they could have been asserted in the original state court action).[7] His continued efforts in federal court to seek the reversal of the foreclosure despite the final rulings of the state court is exactly what "[t]he rule of res judicata is designed to forestall." Anderson v. Phoenix Inv. Counsel of Bost., Inc., 440 N.E.2d 1164, 1169 (Mass. 1982); see also Airframe Sys., Inc. v. Raytheon Co., 520 F. Supp. 2d 258, 265 (D. Mass. 2007), aff'd, 601 F.3d 9 (1st Cir. 2010). In the end, the second element is satisfied because Harihar challenges the same foreclosure and instances of alleged misconduct here as he did in Superior Court.

And third, there was a final judgment on the merits in the Superior Court case because the court granted Harmon's motion to dismiss pursuant to Mass. R. Civ. P. 12(b)(6), [ECF No. 92-1 at 18, 70], and Harihar failed to appeal this dismissal. See Mestek, Inc. v. United Pac. Ins. Co., 667 N.E.2d 292, 294 (Mass. App. Ct. 1996) (Massachusetts state courts "view a motion to

---

[7] The fact that Harihar seeks additional forms of relief here does not change the preclusive effect of the Superior Court judgment under these circumstances. The res judicata analysis depends on whether the claims are based on the same transaction or series of connected transactions, and not on the available theory of damages. See Tuite & Sons, Inc. v. Shawmut Bank, N.A., 686 N.E.2d 1050, 1053 (Mass. App. Ct. 1997) (holding that "the gravamen of both actions is indistinguishable, and any post hoc effort to recast the damages sought is not enough to circumvent res judicata."); see also Reppert v. Marvin Lumber & Cedar Co., 359 F.3d 53, 57 (1st Cir. 2004) (noting that, in discussion of federal res judicata doctrine, "we are unaware of . . . any cognizable precedent holding that the type of relief sought in any way factors into the res judicata formula. Succinctly, it is the operative facts and the underlying causes of actions that are of determinative relevance.").

dismiss under Mass. R. Civ. P. 12(b)(6) as an adjudication on the merits."); see also In re Sonus Networks, Inc., 499 F.3d at 60 (in Massachusetts, "dismissal for failure to state a claim . . . is accorded claim-preclusive effect"). The Harihar I court itself observed that the Superior Court dismissal pursuant to Mass. R. Civ. P. 12(b)(6) was a final judgment. Harihar I, 2013 WL 5925143, n.1.

Accordingly, given the fulsome airing of this case in state court and the finality of the state court judgment, based on the doctrine of claim preclusion, Harihar's claims as against Harmon are barred by res judicata and would be dismissed on this basis as well. Further, the perjury claim against Harmon must also be dismissed because there is no civil cause of action for perjury under Massachusetts law. See Bros. v. Lipp, 825 N.E.2d 1080, 2005 WL 955047, n.3 (Mass. App. Ct. Apr. 26, 2005); Phelps v. Stearns, 70 Mass. 105, 106 (1855).[8] Finally, even absent res judicata, all civil state law claims alleged against Harmon (fraudulent concealment, fraudulent misrepresentation, and aiding and abetting fraud) would also be dismissed based on the litigation privilege more fully discussed below with respect to Haley and Nelson Mullins.

### e.   Motion to Dismiss by Haley and Nelson Mullins [ECF 76]

#### i.   *Litigation Privilege*

Attorney Peter Haley and the law firm Nelson Mullins (the "Attorney Defendants") have filed a motion to dismiss for lack of subject matter jurisdiction (Fed. R. Civ. P. 12(b)(1)) and failure to state a claim upon which relief can be granted (Fed. R. Civ. P. 12(b)(6)). The Complaint identifies Haley as the Managing Partner at Nelson Mullins, Complaint ¶ 38, and Nelson Mullins as current counsel to both Wells Fargo and U.S. Bank, Complaint ¶ 35. Although the Attorney Defendants are not specifically named in any numbered counts, Counts 3 through 6

---

[8] This same reasoning also requires the dismissal of the perjury claim as alleged against the Bank Defendants, the Trust, and the Attorney Defendants.

are alleged against all defendants. Although the Court has already explained why these claims are dismissed against all defendants, the Court will address additional grounds for dismissal of these counts with respect to the Attorney Defendants. Harihar also seems to assert several unnumbered state law claims against the Attorney Defendants (perjury, fraudulent concealment, fraudulent misrepresentation, and aiding and abetting fraud) and a federal RICO claim (Count 14).

Harihar alleges that he filed a complaint with the Massachusetts Board of Bar Overseers, Complaint ¶ 73, against Haley and that Haley is "[o]n record as supporting the misconduct of representing counsel, David E. Fialkow," another attorney who was dismissed from this case in the Court's April 27, 2016 Order [ECF No. 43], Complaint ¶ 78. He further asserts that Nelson Mullins is "considered the 'second tier foreclosure mill law firm.'" Complaint ¶ 77. In the absence of more specific allegations, the Court will presume that Harihar seeks to hold Nelson Mullins and Haley liable in connection with their representation of U.S. Bank and/or Wells Fargo in the allegedly wrongful foreclosure and eviction proceedings against Harihar. The Attorney Defendants argue, however, that even assuming these proceedings were wrongful, and/or that they had made false or misleading statements in connection with these proceedings, they nonetheless would be shielded from any civil liability under the litigation privilege.

Under Massachusetts law, "statements by a party, counsel or witness in the institution of, or during the course of, a judicial proceeding are absolutely privileged provided such statements relate to that proceeding." Sriberg v. Raymond, 345 N.E.2d 882, 883 (Mass. 1976). The privilege applies even if the statements are uttered with malice or in bad faith. Visnick v. Caulfield, 901 N.E.2d 1261, 1264 (Mass. App. Ct. 2009) (citing Correllas v. Viveiros, 572 N.E.2d 7, 10 (Mass. 1991)). Thus, even if Plaintiff had pled facts plausibly suggesting that the Attorney Defendants

24

made misstatements in connection with the foreclosure or eviction proceedings (which he has

not), those claims would be barred by the litigation privilege. See Visnick, 901 N.E.2d at 1264

(holding that litigation privilege applies not only to defamation claims, but to other types of tort

claims as well); see also Tomaselli v. Beaulieu, No. 1:08-CV-10666, 2010 WL 2105347, at *10

(D. Mass. May 7, 2010) (dismissing plaintiff's state-law tort claims against attorneys and law

firm on grounds of the litigation privilege). Accordingly, any civil state law claims alleged

against Haley and/or Nelson Mullins are hereby dismissed as barred by the litigation privilege.

## ii.  _Count 14 (RICO) as Against All Defendants_

The Court also holds that Harihar fails to allege any facts that would support a federal

RICO claim (Count 14) against Haley, Nelson Mullins, or any other defendant. The RICO Act

"is a statute that Congress enacted as a tool in the federal government's 'war against organized

crime,' to help combat 'enduring criminal conduct.'" Home Orthopedics Corp. v. Rodriguez, 781

F.3d 521, 527 (1st Cir. 2015) (first quoting United States v. Turkette, 452 U.S. 576, 587 (1981),

then quoting Libertad v. Welch, 53 F.3d 428, 445 (1st Cir. 1995)). In addition to allowing for

criminal prosecutions,[9] the statute also provides a private right of action for individuals who are

injured in their business or property through a violation of 18 U.S.C. § 1962. Rodriguez, 781

F.3d at 527 (citing 18 U.S.C. § 1964(c)). To plead a viable RICO claim under 18 U.S.C. §

1962(c), "a plaintiff must allege: '(1) conduct, (2) of an enterprise, (3) through [either] a pattern .

. . of racketeering activity,' or 'a single collection of an unlawful debt.'" Id. at 528 (alteration and

omission in original) (first quoting Kenda Corp. v. Pot O'Gold Money Leagues, Inc., 329 F.3d

216, 233 (1st Cir. 2003), then quoting United States v. Weiner, 3 F.3d 17, 24 (1st Cir. 1993)).

---

[9] Although the RICO statute also has a criminal component, Harihar, as a private citizen, cannot
bring an action under the criminal provisions of RICO. Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir.
1989) ("Only the United States as prosecutor can bring a complaint under . . . RICO, 18 U.S.C.
§§ 1961–1963.").

Here, however, Harihar's Complaint makes only vague references to "improper relationships" between Nelson Mullins, the Massachusetts Attorney General's Office, the United States Attorney's Office, and the Boston Bar Association, Complaint ¶¶ 3 (Preface), 16, and only obliquely mentions alleged "schemes" amongst various defendants, see Complaint ¶¶ 7, 8, 105. These allegations are wholly conclusory, as Harihar alleges virtually no facts in support. See In re Patchell, 336 B.R. 1, 14 (Bankr. D. Mass. 2005) ("Plaintiff may not rely on conclusory allegations to establish the existence of an enterprise" under the RICO statute). Further, even assuming that Harihar's home was wrongfully foreclosed on, it is not clear that such conduct would qualify as a predicate act of "racketeering" under 18 U.S.C. § 1961. The Complaint does not identify what alleged acts of racketeering support Harihar's RICO claim. Instead, Harihar states that "[t]he assistance of Federal Prosecutors is needed to assist with accurately articulating the misconduct associated with Count XIV." Complaint ¶ 129. This Court, however, cannot assist Harihar in developing the factual groundwork for his RICO claim. Nor does the Court have the power to appoint a federal prosecutor to investigate potential violations of the law. Such authority resides within the executive, and not the judicial, branch of government. See United States v. Nixon, 418 U.S. 683, 693 (1974) ("the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case"); see also United States v. Smith, 231 F.3d 800, 807 (11th Cir. 2000) ("The decision as to which crimes and criminals to prosecute is entrusted by the Constitution not to the judiciary, but to the executive who is charged with seeing that laws are enforced."). Therefore, the civil RICO claim (Count 14) against Nelson Mullins and Haley, to the extent it is also alleged as against him, is dismissed for failure to state a claim upon which relief can be granted.

Furthermore, the reasons for dismissing the RICO claim (Count 14) as to the Attorney

Defendants is generally applicable to all defendants Harihar asserts it against. Accordingly, the

Court dismisses Count 14 in its entirety.

### f.   Motion to Dismiss by Commonwealth of Massachusetts and Attorney General Coakley [ECF 70]

The Commonwealth of Massachusetts and former Attorney General Martha Coakley are

named in Counts 3 through 6, as well as 13 (Fourteenth Amendment due process and equal

protection violations), 14 (RICO), and 15 (18 U.S.C. § 242) of the Complaint. The Complaint

does not allege that the Commonwealth or Coakley participated in the foreclosure; rather, it

complains about the failure "to prosecute and/or take corrective action" in response to the

complaints lodged by Harihar, Complaint ¶¶ 16, 70, 132, and asserts that the state courts have

similarly abused their discretion and ignored improprieties in the foreclosure and related

proceedings. These claims are subject to dismissal on numerous grounds.

First, the Eleventh Amendment bars suits in federal court against a state without its

consent. Will v. Mich. Dep't. of St. Police, 491 U.S. 58, 70–71 (1989). Furthermore, the

Supreme Court has specifically held that the Eleventh Amendment bars district courts from

hearing pendent state law claims against state officers in federal court without the state's

consent. Pennhurst St. Sch. & Hosp. v. Halderman, 465 U.S. 89, 121 (1984). Congress has not

abrogated, and the Commonwealth has not waived, sovereign immunity with respect to claims

under the FCA, MFCA, RICO, or 42 U.S.C. § 1983. See O'Shell v. Cline, 571 Fed. App'x 487,

490–91 (7th Cir. 2014) (Federal False Claims Act claims against state agency and state officials

in official capacities barred by sovereign immunity); United States v. Univ. of Mass., Worcester,

80 F. Supp. 3d 296, 299–300 & n.4 (D. Mass. 2015), aff'd, 812 F.3d 35 (1st Cir. 2016) (MFCA

claims interpreted analogously to FCA claims); Chaz Const., LLC v. Codell, 137 Fed. App'x 735

(6th Cir. 2005) (RICO claim against state barred by sovereign immunity); Gaines v. Tex. Tech Univ., 965 F. Supp. 886, 889 (N.D. Tex. 1997) (RICO claims against state agency and state officials in official capacities barred by sovereign immunity; Will, 491 U.S. at 71 (holding that Congress did not abrogate state's sovereign immunity in § 1983 suits).[10] Eleventh Amendment immunity extends to suits against state officials being sued in their official capacity, Kentucky v. Graham, 473 U.S. 159, 166 (1985); see also Caisse v. DuBois, 346 F.3d 213, 218 (1st Cir. 2003) (per curiam), but not in their individual capacity, Dasey v. Anderson, 304 F.3d 148, 153 (1st Cir. 2002). Harihar has failed to make any factual allegations regarding Coakley's personal involvement, and the Court therefore interprets Harihar's allegations as brought against her in her official capacity only. See Anderson v. Heffernan, 2013 WL 1629122, at *3 (D. Mass. Apr. 9, 2013) (interpreting claim against state official, where no personal involvement was alleged, as official capacity claim and not individual capacity claim). While requesting prospective injunctive relief may provide an exception to the Eleventh Amendment, Ex parte Young, 209 U.S. 123 (1908), Harihar does not appear to be requesting an injunction in connection with any of the violations he alleges with respect to the Commonwealth or Coakley. Accordingly, Harihar's claims against the Commonwealth and Coakley are barred by the Eleventh Amendment.

Third, the claims against the Commonwealth, including the Massachusetts state courts, and Coakley are barred by judicial and prosecutorial immunity. Absolute judicial immunity protects judges from acts performed within the scope of their jurisdiction. See Mireles v. Waco, 502 U.S. 9, 11 (1991) (per curiam) ("[J]udicial immunity is an immunity from suit, not just from

---

[10] To the extent that Harihar intended to allege a copyright infringement claim against the Commonwealth pursuant to 17 U.S.C. § 501, the Eleventh Amendment would bar that claim as well. See Lane v. First Nat. Bank of Bost., 871 F.2d 166, 176 (1st Cir. 1989).

[the] ultimate assessment of damage[].”); <u>Becks v. Plymouth Cty. Sup. Ct.</u>, 511 F. Supp. 2d 203, 206 (D. Mass. 2007) (“Absolute immunity from civil liability applies to any judicial officer for any normal and routine judicial act.”). Judicial immunity, in turn, bars *respondeat superior* lawsuits premised on the otherwise immune conduct of judicial officials. <u>See</u> <u>Dicenzo v. Prob.</u>, 2015 WL 9690895, at *4 (D. Mass. Nov. 19, 2015). Because Plaintiff’s allegations concern judicial conduct wholly performed within the scope of the jurisdiction of the courts, all claims based on alleged “abuse[s] of judicial discretion,” Complaint ¶¶ 65–69, must be dismissed.

Similarly, any allegations against the Commonwealth and Coakley regarding the failure “to prosecute and/or take corrective action” in response to Harihar’s criminal complaints, <u>id.</u> ¶¶ 16, 70, 132, are barred by the doctrine of prosecutorial immunity. “[A] prosecutor enjoys absolute immunity from suit based on actions taken pursuant to [her] quasi-judicial function.” <u>Celia v. O’Malley</u>, 918 F.2d 1017, 1019 (1st Cir. 1990); <u>see also</u> <u>Van de Kamp v. Goldstein</u>, 555 U.S. 335, 340–43 (2009) (prosecutor enjoys absolute immunity as long as challenged conduct falls within function as advocate for a governmental entity); <u>Brown v. Wachovia Bank</u>, 244 F.R.D. 16, 18 (D.D.C. 2007) (prosecutorial immunity barred RICO claims). Prosecutorial immunity extends to bar lawsuits challenging a prosecutor’s decision to “decline[] to initiate an investigation or prosecution at the request of the plaintiffs.” <u>Becks</u>, 511 F. Supp. 2d at 206; <u>see also</u> <u>Dicenzo</u>, 2015 WL 9690895, at *5 (Attorney General and District Attorney were immune from lawsuit alleging that they failed to initiate prosecutions). Further, prosecutorial immunity bars *respondeat superior* lawsuits premised on the otherwise immune conduct of prosecutors. <u>See</u> <u>Mierzejewski v. Mandell</u>, 2014 WL 1247990, at *5 (D. Mass. Mar. 24, 2014). Consequently, under the doctrine of prosecutorial immunity,

Harihar's claims based on alleged failures "to prosecute and/or take corrective action" in response to Harihar's criminal complaints, Complaint ¶¶ 16, 70, 132, must also be dismissed.

Fourth, even absent prosecutorial and judicial immunity and the Eleventh Amendment bar, Counts 13 and 15 as levied against the Commonwealth and Coakley would be dismissed because Harihar provided insufficient factual allegations to survive a motion to dismiss. Count 13 claims that the Commonwealth violated Harihar's Fourteenth Amendment Due Process and Equal Protection rights. Although there is no direct cause of action under the Constitution, see Tomaselli, 967 F. Supp. 2d at 433 n.3, an individual may bring a private cause of action pursuant to 42 U.S.C. § 1983 for deprivations of federally-secured rights. Boveri v. Town of Saugus, 113 F.3d 4, 6 (1st Cir. 1997). Therefore, the Court will liberally construe Count 13 to state a cause of action under § 1983. "To make out a viable section 1983 claim, a plaintiff must show both that the conduct complained of transpired under color of state law and that a deprivation of federally secured rights ensued." Santiago v. Puerto Rico, 655 F.3d 61, 68 (1st Cir. 2011).

Harihar, however, does not allege any facts plausibly suggesting that the Commonwealth deprived him of his right to due process or equal protection. The Equal Protection Clause reads, in pertinent part, "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To plead an Equal Protection violation, a person must plead the following: "(1) that the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013) (citations omitted) (quoting Rubinovitz v. Rogato, 60 F.3d 906, 909–10 (1st Cir. 1995)). A person claiming an Equal Protection violation must also plead that the state

acted in a discriminatory manner. Jarvis v. Village Gun Shop, Inc., 805 F.3d 1, 8 (1st Cir. 2015).

In this case, Harihar has not sufficiently pleaded an Equal Protection violation because he has not

alleged that he was selectively treated or that any selective treatment (assuming it occurred) was

based on a constitutionally impermissible consideration.

The Fourteenth Amendment's Due Process Clause provides that "[n]o State shall . . .

deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend.

XIV, § 1. However, "nothing in the language of the Due Process Clause itself requires the State

to protect the life, liberty, and property of its citizens against invasion by private actors."

DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 195 (1989). Moreover, the

facts alleged do not indicate that this is one of the "limited circumstances [where] the

Constitution imposes upon the State affirmative duties of care and protection with respect to

particular individuals," see id. at 198, such as "when the State by the affirmative exercise of its

power so restrains an individual's liberty that it renders him unable to care for himself, and at the

same time fails to provide for his basic human needs," id. at 200. Thus, Harihar has no viable

Due Process claim against the Commonwealth or Coakley for their alleged failure to prosecute.

Accordingly, Count 13 is dismissed.

Count 15 of the Complaint purports to assert a claim for "deprivation of rights" under 18

U.S.C. § 242. Section 242, however, sets forth criminal penalties for deprivations of civil rights

under color of state law. Section 242 is a criminal statute and does not provide a private right of

action. See Cok, 876 F.2d at 2 (noting that "a private citizen has no authority to initiate a federal

criminal prosecution" under Section 242); see also Rockefeller v. U.S. Ct. of App. Office, for

Tenth Circuit Judges, 248 F. Supp. 2d 17, 23 (D.D.C. 2003) (granting motion to dismiss claim

brought under 18 U.S.C. § 242). Therefore, Count 15 is also dismissed for failure to state a claim upon which relief can be granted.

While Counts 3 through 6 have been dismissed on other grounds, they are also dismissed because Harihar cannot allege federal or Massachusetts false claims counts against the Commonwealth and Coakley. Although there are a number of reasons for this, suffice it to say that neither statute permits suit against the Commonwealth. See Univ. of Mass., Worcester, 80 F. Supp. 3d at 299–300 & n.4 (state agencies are not "persons" for purposes of Massachusetts False Claims Act and are therefore exempt from suit); United States v. Univ. of Mass., Worcester, 812 F.3d 35 (1st Cir. 2016) (state agencies are not "persons" for purposes of Federal False Claims Act or the Federal False Claims Act, and are therefore exempt from suit). Further, as explained above, Harihar has failed to make sufficient factual allegations against the Commonwealth and Coakley to sustain a RICO claim (Count 14). See Rodriguez, 781 F.3d at 527. Accordingly, all claims against the Commonwealth and Coakley are dismissed.

**g.  Motion to Dismiss by Wells Fargo and U.S. Bank (the Bank Defendants) [ECF 66]**

In its April 27th Order, the Court granted the Bank Defendants' motion to dismiss all counts alleged against them except Counts 7 through 12. [ECF No. 43]. The Bank Defendants had moved to dismiss those counts, asserting that the claims were barred by res judicata based on Harihar's two prior related state lawsuits in Housing Court and Superior Court, see Harihar I, 2013 WL 5925143, at *1–2; Harihar II, 2014 WL 981527, at *1. Although the Court agreed that the state court cases likely involved the same parties as the instant case and that both had resulted in final judgments, the Court was not provided enough information to decide whether there was an "identity" between the claims at issue in the two prior state cases and the claims asserted in Counts 7 through 12 of the instant Complaint. As a result, the Bank Defendants' earlier motion

32

to dismiss with regard to Counts 7 through 12 was denied without prejudice, allowing them to renew with additional documentation. The Bank Defendants have now renewed their motion to dismiss based on res judicata, but this time with additional supporting documentation from the two prior state cases, including relevant transcripts and pleadings to demonstrate that the claims Harihar is asserting in federal court are barred by res judicata.

Counts 7 through 11 assert claims under Massachusetts General Laws Chapter 93A, which prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2. Harihar alleges that the Bank Defendants violated Chapter 93A by foreclosing without being the holder of the mortgage (Count 7); by failing to identify the present holder of the mortgage in the Notice of Sale (Count 8); by falsely representing their status as "holder" of the mortgage (Count 9); by conducting deceptive loan modification and servicing practices (Count 10); and by failing to register assignments of mortgages (Count 11). In addition, Count 12 seeks a declaratory judgment that the defendants failed to register transfers of beneficial interests in mortgages, as required by Mass. Gen. Laws. ch. 185, § 67.

"Under federal law, a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which that judgment was entered." McDonough v. City of Quincy, 452 F.3d 8, 16 (1st Cir. 2006) (internal quotations and citations omitted). Therefore, the Court applies Massachusetts law on claim preclusion, which "makes a valid final judgment conclusive on the parties or privies, and bars further litigation of all matters that were or should have been adjudicated in the action." Id. As discussed in greater detail earlier, under Massachusetts law, "there are three essential elements to the doctrine of claim preclusion: (1) the identity or privity of the parties to the present and prior

actions; (2) identity of the cause[s] of action; and (3) a prior final judgment on the merits." Id. (quoting Bui v. Ma, 818 N.E. 2d 572, 579 (Mass. App. Ct. 2004)).

The Bank Defendants continue to argue that each of the claims in Counts 7 through 12 is barred by the doctrine of res judicata, specifically claim preclusion, because of the Housing Court's grant of U.S. Bank's motion for summary judgment and the Superior Court's grant of the Bank Defendants' motion to dismiss.[11] Two of the three elements of claim preclusion are easily met here for both the Housing Court and Superior Court judgments. First, in Housing Court, U.S. Bank sued Harihar, and in Superior Court, Harihar sued both U.S. Bank and Wells Fargo. Under the circumstances presented here, this establishes identity of the parties.

Second, both state courts issued a final judgment on the merits. Following a hearing, the Housing Court granted summary judgment for U.S. Bank on its claim for possession of the Property, see [ECF Nos. 67-5; 67-6], and the decision was affirmed by the Massachusetts Appeals Court in Harihar I, 2013 WL 5925143, at *1. Under Massachusetts law, a grant of summary judgment operates as a final judgment on the merits. DaCruz-Crossely v. U.S. Bank Nat'l Ass'n, 926 F. Supp. 2d 405, 408 (D. Mass. 2013) (holding that under Massachusetts law, "Superior Court's grant of summary judgment was a final judgment on the merits."); Buba v. Deutsche Bank Nat'l Trust Co. Americas, No. 16-cv-10421-PBS, 2016 WL 2626861, at *4 (D. Mass. May 6, 2016) (citing Jarosz v. Palmer, 766 N.E.2d 482, 489 (Mass. 2002)).

Similarly, as discussed above with respect to Harmon, granting a motion to dismiss on Mass. R. Civ. P. 12(b)(6) grounds, as the Superior Court did in this case, operates as a final judgment on the merits. The Bank Defendants, the only defendants named in Counts 7 through 12, moved to dismiss identical counts in the Superior Court complaint pursuant to Mass. R. Civ.

---

[11] The Court already addressed the preclusive effect of the Superior Court judgment with respect to Harmon. The same reasoning applies with respect to the Bank Defendants.

P. 12(b)(6) and (9). [ECF No. 67-11]. Harihar did not respond to this motion, and the Superior Court granted it pursuant to Mass. R. Civ. P. 12(b)(6).[12] [ECF No. 67-12]. He failed to appeal the dismissal, but instead later filed motions for a new trial and reconsideration, which the Superior Court denied (and which were later affirmed by the Massachusetts Appeals Court, see Harihar II). Massachusetts state courts "view a motion to dismiss under Mass. R. Civ. P. 12(b)(6) as an adjudication on the merits." Mestek, Inc., 667 N.E.2d at 294; see also In re Sonus Networks, 499 F.3d at 60 (in Massachusetts, "dismissal for failure to state a claim . . . is accorded claim-preclusive effect"). In fact, the Harihar I court, on appeal, noted in a footnote that the Superior Court dismissed Harihar's claims under Mass. R. Civ. P. 12(b)(6), and because Harihar failed to appeal the decision, "the allowance of the motion to dismiss renders that decision final." Harihar I, 2013 WL 5925143, at *1 n.1.

Thus, the only remaining issue is whether the "identity" of the claims prong is met for claim preclusion purposes. With respect to the Housing Court action, the Bank Defendants argue that because the Housing Court already determined that U.S. Bank had valid possession of the Property, res judicata applies to claims involving the propriety of the foreclosure. Specifically, they argue that once summary process was initiated, Harihar could have litigated all issues, including equitable claims, related to title. [ECF No. 67 at 8]. Although this is presently true, it was not possible at the time of the Housing Court action at issue here. Prior to Bank of Am., N.A. v. Rosa, 999 N.E.2d 1080, 1089 (Mass. 2013), Harihar would not have been able to raise

---

[12] Mass. R. Civ. P. 12(b)(9) provides for the dismissal of an action due to the "pendency of a prior action in a court of the Commonwealth," and guards against claim splitting. Yentile v. Howland, 525 N.E.2d 689, 690 (Mass. 1988). The Court finds that the Superior Court's grant of the Bank Defendants' motion to dismiss was based on Mass. R. Civ. P. 12(b)(6), rather than 12(b)(9), because Harihar raised claims before the Superior Court that the Housing Court did not have jurisdiction to hear. Thus, a wholesale dismissal of the entire complaint, which occurred in Superior Court, would not have been possible under Mass. R. Civ. 12(b)(9).

equitable counterclaims in Housing Court, so he would presumably have had to raise any such issues in the Superior Court action. See Tasiopoulos v. RBS Citizens, NA, No. 14-11486-MLW, 2016 WL 554776, at *4 (D. Mass. Feb. 10, 2016). In fact, the Housing Court made it very clear that it did not have subject matter jurisdiction to hear all of the claims that Harihar attempted to raise. See [ECF No. 67-5].

Regardless of whether the Housing Court judgment bars Harihar from re-litigating non-equitable claims related to the Property's title, however, the Superior Court judgment bars all of his foreclosure-related claims in Counts 7 through 12 as against the Bank Defendants. The Superior Court claims are identical to those Harihar raises in the instant case. Compare Superior Court Complaint Claims 1 through 6 [ECF No. 67-9] with Second Amended Complaint Claims 7 through 12 [ECF No. 24].[13] As explicated more fully above, even if there is some variation in the

---

13

| Superior Court Complaint Claims [ECF No. 67-9] | | Second Amended Complaint Claims [ECF No. 24] | |
|---|---|---|---|
| No. | Substance | No. | Substance |
| 1 | "Unfair or Deceptive Acts or Practices in Violation of G. L c. 93A, § 2: Foreclosing Without Being the Holder of the Mortgage" | 7 | "Unfair or Deceptive Acts or Practices in Violation of G.L. c. 93A, § 2: Foreclosing Without Being the Holder of the Mortgage" |
| 2 | "Unfair or Deceptive Acts or Practices in Violation of G. L c. 93A, § 2: Failing to identify the Present Holder of the Mortgage in Notice of Sale" | 8 | "Unfair or Deceptive Acts or Practices in Violation of G.L. c. 93A, § 2: Failing to identify the Present Holder of the Mortgage in Notice of Sale" |
| 3 | "Unfair or Deceptive Acts or Practices in Violation of G. L c. 93A, § 2: Falsely Representing Status as Holder of Mortgage" | 9 | "Unfair or Deceptive Acts or Practices in Violation of G.L. c. 93A, § 2: Falsely Representing Status as Holder of Mortgage" |
| 4 | "Unfair or Deceptive Acts or Practices in Violation of G. L. c. 93A, § 2: Deceptive Loan Modification and Servicing Practices" | 10 | "Unfair or Deceptive Acts or Practices in Violation of G. L. c. 93A, § 2: Deceptive Loan Modification and Servicing Practices" |

arguments underlying the claims, identity is established here because they "derived from the same transaction or series of connected transactions." TLT Constr. Corp., 716 N.E.2d at 1051 (quoting Saint Louis, 568 N.E.2d at 1181); see also Andrew Robinson Int'l, Inc., 547 F.3d at 52 ("Discrete theories of liability may constitute identical causes of action for claim preclusion purposes if they are based on the same nucleus of operative facts."). Res judicata precludes Harihar from essentially re-litigating in federal court the same claims that were already dismissed in state court.

Moreover, with regard to Count 12, Mass. Gen. Laws ch. 185, § 67 only applies to "registered land." Massachusetts has two different systems for land title: one for "registered land" and one for "recorded land." See Bailey v. Wells Fargo Bank, NA (In re Bailey), 468 B.R. 464, 477 n.19 (Bankr. D. Mass. 2011) (explaining registered and recorded land in Massachusetts). There is no allegation that the Property in this case was registered as opposed to merely recorded, so there is no reason to apply the requirements of § 67 to this case. Without this allegation, Harihar has failed to state a claim upon which relief may be granted in Count 12, which is therefore also dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Finally, as already explained above, the perjury claim is dismissed because there is no civil cause of action for perjury under Massachusetts law. See Lipp, 2005 WL 955047, at *1 n.3; Phelps, 70 Mass. at 106. Accordingly, all claims against the Bank Defendants are dismissed.

| 5 | "Unfair or Deceptive Acts or Practices in Violation of G. L c. 93A, § l: Failure to Register Assignment of Mortgages" | 11 | "Unfair or Deceptive Acts or Practices in Violation of G. L. c. 93A, § 2: Failure to Register Assignment of Mortgages" |
|---|---|---|---|
| 6 | "Failure to Register Transfer of Beneficial Interests in Mortgages in Violation of G. L c. 185, § 67" | 12 | "Failure to Register Transfer of Beneficial Interests in Mortgages in Violation of G. L. c. 185, § 67" |

**h.  <u>Motion to Dismiss by Trust Defendant (CMLTI 2006 AR-1) [ECF No. 68]</u>**

Harihar identifies defendant CMLTI 2006 AR-1 (the Trust) as the Residential Mortgage-Backed Security Trust that held his mortgage loan. Complaint ¶ 33. The Complaint otherwise does not mention the Trust and it is not clear which counts are meant to be asserted against it besides Counts 3 through 6. The Trust moves for dismissal on the grounds that a trust cannot be directly sued in the state of Massachusetts. Under Fed. R. Civ. P. 17(b)(3), whether a trust can be sued is determined by the law of the state where this Court sits. The Court therefore applies Massachusetts law to determine whether Harihar is permitted to sue the Trust in its individual capacity. Under Massachusetts law, a trust ordinarily cannot be sued directly. <u>See</u> <u>Morrison v. Lennett</u>, 616 N.E.2d 92, 94 (Mass. 1993) ("[A] trust is not a legal entity which can be sued directly."). Because Plaintiff is not permitted to sue the Trust under Massachusetts law, the state law claims against the Trust are dismissed.

To the extent that Harihar alleges federal law claims against the Trust and assuming for the purposes of this Memorandum and Order that the Trust could be sued to enforce federal rights, he fails to include any factual allegations to sustain such claims against the Trust. Thus, any such claims are dismissed for failure to state a claim upon which relief can be granted. A bank, however, can sue or be sued as a "trustee" of the relevant trust. <u>See, e.g.,</u> <u>Young v. Wells Fargo Bank, N.A.,</u> 717 F.3d 224 (1st Cir. 2013); <u>Silva v. Deutsche Bank Nat'l Tr. Co.</u>, No. MICV201203951H, 2012 WL 6016813, at *1 (Mass. Super. Nov. 14, 2012); <u>U.S. Bank Nat'l Ass'n v. Ibanez</u>, 941 N.E.2d 40 (Mass. 2011); <u>Schaefer-Ung v. U.S. Bank</u>, No. 12 MISC 469684(RBF), 2014 WL 2619555 (Mass. Land Ct. June 10, 2014); <u>Chase Manhattan Bank v. Motorola, Inc.,</u> 136 F. Supp. 2d 265, 269 (S.D.N.Y. 2001) ("Under Massachusetts law, a trust was not itself a juridical person; its property was legally owned by the trustees, who alone

possessed the powers to hold, manage and dispose of the assets of the trust, and the trust could sue and be sued only by its trustees."). The property at issue here is legally owned by U.S. Bank, which serves as the Trust's representative and has the exclusive ability to handle its assets. See McClintock v. Scahill, 530 N.E.2d 164, 165 (Mass. 1988) ("a trustee represents and acts for the trust in dealing with third parties . . . [and] has full legal title to all property of a trust and the rights of possession that go along with it." (internal citation omitted)). Although Harihar could potentially reach the Trust through suing the bank, dismissing Harihar's claims against U.S. Bank extinguishes any claims against the Trust as well.

IV.    CONCLUSION

For the reasons explained above, the motions to dismiss [ECF Nos. 66, 68, 70, 72, 76, 78, 91] are GRANTED. All claims against all defendants are DISMISSED with prejudice. Harihar will not be allowed further leave to file a Third Amended Complaint as justice does not so require and it appears that any amendments would be futile.

SO ORDERED.

March 31, 2017

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE